JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, Joshua Clay, appeals from his convictions for gross sexual imposition, unlawful sexual conduct with a minor, and pandering sexually-oriented material involving a minor, and his classification as a sexual predator. Clay contends that 1) his guilty pleas were not knowingly and intelligently made; 2) the trial court was not impartial at his sentencing hearing, and sentenced him based on improper judicial factfinding and without considering the relevant statutory criteria; 3) his convictions for criminal sexual offenses involving his wife unconstitutionally infringe on the marital relationship; and 4) the trial court erred in finding him to be a sexual predator. We affirm.
I. The Facts
 {¶ 2} The record reflects that in July 2003, then 13-year-old K.B.[1] began hanging out with Clay, who was 19 years old, in the basement of the home he shared with his mother. Their friendship evolved into a sexual relationship. In November 2003, Clay took nude photos and videos of K.B. and of both of them engaging in sexual activity; he later posted the photos on the Internet.
 {¶ 3} In May 2004, Detective Michael Tulcewicz of the Brooklyn Heights Police Department went to Clay's home to investigate reports of sexual contact between Clay and K.B., but Clay denied that K.B. was there. Shortly thereafter, Clay learned that K.B. was pregnant and on June 4, 2004, with the permission of K.B.'s *Page 4 
mother, Clay and K.B. were married in South Carolina. Several days later, after they returned to Ohio, Clay took K.B. to have an abortion. Clay and K.B. then moved into the basement of Clay's mother's home where thereafter, according to Detective Tulcewicz, K.B. "was held basically hostage."
 {¶ 4} In August 2005, K.B. escaped to Pennsylvania. In September 2005, she was admitted to a hospital for psychological evaluation; shortly thereafter she contacted the Brooklyn Heights Police Department and reported that Clay had physically, mentally, and sexually abused her.
 {¶ 5} In October 2005, Brooklyn Heights police executed a search warrant on Clay's residence. In February 2006, they confirmed that the computer discs seized during the search contained pornographic material involving Clay and K.B.
 {¶ 6} In the meantime, Clay had gone to Pennsylvania to search for K.B.[2] While there, he met 15-year-old S.C. Despite being warned by S.C.'s father to stay away from S.C, Clay communicated with her via cell phone and email, took her on several dates, and had sex with her.
 {¶ 7} On July 5, 2006, Detective Tulcewicz received a call from S.C.'s father, in which he informed Tulcewicz that S.C. was missing and believed to be with Clay. *Page 5 
Upon questioning, Clay admitted that he knew S.C. and had communicated with her via cell phone and email, but denied that he knew where she was.
 {¶ 8} On July 7, 2006, after further investigation, Detective Tulcewicz found S.C. and Clay at a Greyhound bus station. Clay had purchased a one-way bus ticket for S.C, under a fictitious name, to Las Vegas. It was subsequently learned that Clay had driven to Pennsylvania on July 5, 2006, picked up S.C, taken her to Ohio without her parents' permission, and then got her a room at a hotel, where he had sex with her several times.
 {¶ 9} After Clay was indicted and released on bond, the prosecutor's office obtained a videotape of Clay's "Late Night with Fapster" program, an Internet show he hosted every night. On the video, Clay, who is extremely intoxicated, masturbates for his viewers. He also states, "I'll admit it. * * * I kidnapped the bitch, her name is Samantha," and "I f — ed her hard on this table." According to S.C.'s father, S.C. now goes to therapy every week and is on medication "so that she can cope."
 {¶ 10} In August 2006, a Cuyahoga County Grand Jury returned a 25-count indictment against Clay, charging him with offenses of gross sexual imposition, illegal use of a minor in nudity-oriented material or performance, unlawful sexual conduct with a minor, and pandering sexually-oriented matter involving a minor. Clay subsequently pled guilty to an amended count one of gross sexual imposition, counts ten, 11, 12, 14, 15, 16, 17, 18 and 19, unlawful sexual conduct with a minor, *Page 6 
and count 13, pandering sexually-oriented matter involving a minor. The trial court sentenced Clay to ten years incarceration and classified him as a sexual predator. Clay assigns seven errors (set forth in the appendix) on appeal. For clarity, we consider them out of their assigned order.
II. Guilty Pleas
 {¶ 11} In his second assignment of error, Clay challenges his guilty pleas. Under Crim.R. 11(C)(2), before accepting a guilty plea, a trial court must address the defendant personally and 1) determine that the defendant is making the plea voluntarily, with an understanding of the nature of the charges and the maximum penalty; 2) inform the defendant of and determine that the defendant understands the effect of the guilty plea, and that the court may proceed with judgment after accepting the plea; and 3) inform the defendant and determine that the defendant understands that he is waiving his rights to a jury trial, to confront the witnesses against him, to call witnesses in his favor, and to require the state to prove his guilt beyond a reasonable doubt at a trial where the defendant cannot be forced to testify against himself.
 {¶ 12} The trial court must actually explain the constitutional rights mentioned above to the defendant and determine that the defendant understands them. State v. Ballard (1981), 66 Ohio St.2d 473, paragraph two of the syllabus. Under the broader standard for rights not protected by the constitution, reviewing courts consider whether the trial court substantially complied with Crim.R. 11(C)(2). State *Page 7 v. Nero (1990), 56 Ohio St.3d 106, 108; State v. Stewart (1977),51 Ohio St.2d 86, 93. "Substantial compliance" means that the defendant subjectively understood the implications of his plea and the nature of the rights he was waiving. Id. Further, a defendant who challenges his plea on the basis that it was not knowingly, voluntarily and intelligently made must demonstrate prejudice as a result of the alleged error, i.e., that he would not have otherwise made the plea. Id.;Nero at 108.
 {¶ 13} The record indicates that the trial court fully informed Clay of his constitutional rights and made sure that he was knowingly waiving those rights. Clay's argument on appeal concerns the trial court's failure to explain to him the elements of the crimes to which he was pleading guilty and to identify a particular victim of each crime.
 {¶ 14} However, as this court has held, "courts are not required to explain the elements of each offense, or even to specifically ask the defendant whether he understands the charges, unless the totality of the circumstances shows that the defendant does not understand the charges."State v. Whitfield, Cuyahoga App. No. 81247, 2003-Ohio-1504, at ¶ 14;State v. Steele, Cuyahoga App. No. 85901, 2005-Ohio-5541, at ¶ 11. There is nothing in this record to indicate that Clay did not understand the charges to which he pled guilty.
 {¶ 15} Additionally, Clay has failed to demonstrate that he was prejudiced in any way by his plea. Clay does not allege that he would not have pleaded guilty if *Page 8 
the trial court had defined each element of the offenses or further identified the victims of his crimes. Without a showing of prejudice, Clay's argument fails.
 {¶ 16} Appellant's second assignment of error is overruled.
III. Sentencing Issues
 {¶ 17} Clay's first, third, and fourth assignments of error challenge his sentence.
A. An Impartial Judge
 {¶ 18} In his first assignment of error, Clay contends that the trial judge was not impartial at his sentencing hearing. Specifically, Clay contends that the trial judge lost her impartiality when his mother attempted to defend him at the sentencing hearing. The judge told Clay's mother that she found "it appalling that you allowed him to have this little Internet shenanigans [sic] going on down there," and that "[a]s a woman, I don't know how you can stand there and tell me that it's okay for an adult parent to let a 20-year-old boy live with a 14-year-old girl in the basement and be on the Internet masturbating to people every night across the world." The judge then continued:
 {¶ 19} "So no, I don't respect you. I'm sorry, but I don't respect you and I don't respect this conduct because you have facilitated this and you are part of the victimization of these people. Do you understand that? Your behavior with your son helped victimize their children. You owe them an apology, do you even understand *Page 9 
that? Do you or not? * * * You were the gatekeeper and you didn't do your job. So I frankly don't want to hear anything else from you. You can take your seat." According to Clay, these statements indicate that the trial judge lost her objectivity and impartiality, thereby denying him a fair tribunal.
 {¶ 20} Clay failed to raise any argument regarding the judge's impartiality in the trial court and thus has waived all but plain error.Stores Realty Co. v. Cleveland (1975), 41 Ohio St.2d 41, 43. Plain error is an obvious error or defect in the trial court proceeding that affects a substantial right. See, generally, State v. Long (1978),53 Ohio St.2d 91, 94; see, also, Crim.R. 52(B). An alleged error is plain error if the error is "obvious" and but for the error, the outcome of the proceeding "clearly would have been otherwise." State v. Barnes, 94 Ohio St.3d 21,28, 2002-Ohio-68; Long, supra.
 {¶ 21} It is well-settled that a criminal proceeding before a biased judge is fundamentally unfair and denies a defendant due process of law.State v. LaMar, 95 Ohio St.3d 181, 2002-Ohio-2128, at ¶ 34. "Judicial bias is a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as distinguished from an open state of mind which will be governed by the law and the facts." Id.
 {¶ 22} Despite the trial judge's comments to Clay's mother, the record reflects that the trial judge was not biased in this case. A review of the entire sentencing *Page 10 
hearing indicates that the trial judge carefully reviewed the facts and allegations regarding Clay's crimes before imposing sentence. She asked questions of the people who made statements, and after hearing the statements and arguments, before sentencing Clay, she told him, "I will be very frank with you. I have gone back and forth as I have listened to you people as far as how much time you should get. I made it clear to both attorneys before we started that the total term of 23 years was absolutely not reasonable. * * * However, I also believe a minimum term is insufficient."
 {¶ 23} The record indicates that the trial judge did not exhibit a "hostile feeling or spirit of ill will" toward Clay nor did she have a "fixed anticipatory judgment." She was understandably appalled by the actions of Clay's mother in facilitating Clay's offenses, but the record does not reflect that this affected her objectivity towards Clay. As we find no plain error, Clay's first assignment of error is overruled.
B. Consecutive Sentences
 {¶ 24} With respect to the sentence imposed by the trial court, Clay contends in his third assignment of error that the trial court erred in sentencing him to consecutive sentences. Clay argues that Ohio law carries a presumption that sentences be served concurrently, rather than consecutively, and thus, the trial court erred in not giving any reasons under R.C. 2929.14 for sentencing him to consecutive, rather than concurrent, sentences. *Page 11 
 {¶ 25} In Blakely v. Washington (2004), 542 U.S. 296, 124 S.Ct. 2531,159 L.Ed.2d 403, the United States Supreme Court held that, in light of the Sixth Amendment's right to a jury trial, any fact (other than a prior conviction) that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt or admitted by the defendant. In State v.Foster, 109 Ohio St.3d 1, 2006-Ohio-856, the Supreme Court of Ohio held that certain sections of Ohio's sentencing code violated the principles announced in Blakely because they required judicial findings of fact not proven to a jury beyond a reasonable doubt before a court could impose certain sentences. Among these provisions was R.C. 2929.14(E), regarding consecutive sentences. The Ohio Supreme Court found this section, among others, unconstitutional and excised it from Senate Bill 2. After the severance, trial courts have full discretion to impose a sentence within the statutory range, without making findings or giving reasons for imposing maximum, consecutive, or more than minimum sentences. Id. at paragraph seven of the syllabus. Accordingly, the trial court was not required to give its reasons for imposing consecutive sentences.
C. Statutory Sentencing Criteria
 {¶ 26} Clay next contends that the trial court erred in sentencing him to prison rather than community control on the fourth degree felonies to which he pled guilty.[3] *Page 12 
Clay contends that fourth degree felonies presumptively call for a community control sanction rather than imprisonment, and the trial court made no findings under R.C. 2929.13(B)(2) which would allow the court to sentence him to prison.
 {¶ 27} Clay's argument fails. In Foster, supra, the Ohio Supreme Court addressed sentencing for fourth and fifth degree felonies. The Supreme Court analyzed R.C. 2929.13(B)(1) and (2), and found that "there is no presumption in favor of community control" and "the statute does not prevent a court from imposing a prison term without these findings." Id. at T|69. The Supreme Court explained that "a judge who does not make one of the (B)(1) findings and does not find that community control is a sufficient sanction could still impose a prison term." Id. In short, "the fact that a judge failed to make the R.C. 2929.13(B) findings does not preclude the imposition of a prison term." State v. Duncan, Cuyahoga App. No. 87518, 2006-Ohio-5024, at ¶ 12.
 {¶ 28} The Ohio Supreme Court explained in Foster that if the particular R.C. 2929.13(B) findings are not made, then "the judge is simply guided by the general principles of sentencing" in imposing sentence. Id. at fn. 91. Likewise, in State v. Mathis,109 Ohio St.3d 54, 2006-Ohio-855, released the same day as Foster, the Ohio Supreme Court clarified that:
 {¶ 29} "[although after Foster, the trial court is no longer compelled to make findings and give reasons at the sentencing hearing * * *, nevertheless, in exercising *Page 13 
its discretion the court must carefully consider the statutes that apply to every felony case. Those include R.C. 2929.11, which specifies the purposes of sentencing,[4] and R.C. 2929.12, which provides guidance in considering factors relating to the seriousness of the offense and recidivism of the offender. In addition, the sentencing court must be guided by statues that are specific to the case itself." Id. at T|38.
 {¶ 30} Clay argues that the trial judge did not consider these statutory criteria in sentencing him, thereby denying him due process of law.
 {¶ 31} The record belies Clay's argument. With respect to the R.C.2929.11 purposes of sentencing, the trial judge told Clay before sentencing him that he was "a risk to the rest of us." She explained that although she was sympathetic to his alleged rape by his father, "I can't use that in my evaluation of your risk to the public as an excuse. It may be * * * something you might use for treatment, to help yourself have a better life, but that is not a mitigating factor to me when I'm evaluating the protection of the public and the punishment for the offender."
 {¶ 32} The record also reflects that the trial judge considered the factors set forth in R.C. 2929.12(B). Specifically, with respect to the seriousness of Clay's conduct, she noted that the victims were traumatized at a young age and "now the *Page 14 
rest of us will have to worry the rest of their lives how that trauma will be acted out in their lives." See R.C. 2929.12(B)(1) and (2).
D. Judicial Factfinding
 {¶ 33} Finally, in his fourth assignment of error, Clay argues that the judge improperly engaged in the type of "judicial factfinding" prohibited by Foster when she sentenced him. He argues that as a first offender, he was entitled to a statutory presumption of a minimum sentence and, because he did not admit anything other than the offenses in the indictment to which he pled guilty, and nothing therein would have subjected him to more than a minimum sentence, any facts relied on by the judge to sentence him to more than the minimum were the result of prohibited judicial factfinding.
 {¶ 34} We disagree. After Foster, trial courts have full discretion to impose a prison sentence within the statutory range and are not required to give reasons for imposing more than the minimum sentence.Foster, supra, at paragraph seven of the syllabus. Clay pled guilty to ten fourth degree felonies and one second degree felony. Under Ohio law, second degree felonies are punishable by between two and eight years in prison. Felonies of the fourth degree are punishable by between six and 18 months in prison. R.C. 2929.14(A)(2). The trial court sentenced Clay to serve five years on the second degree felony and 15 months on each of the fourth degree felony counts, and ordered several counts to be served consecutively, for a total sentence of ten years. This sentence is within the statutory range and therefore *Page 15 
authorized by law. Appellant's first, third, and fourth assignments of error are therefore overruled.
IV. Unconstitutional Infringement on the Marital Relationship
 {¶ 35} In his fifth assignment of error, Clay contends that his convictions for gross sexual imposition, unlawful sexual conduct with a minor, and pandering sexually-oriented material involving a minor, with respect to K.B., involved consensual conduct between married partners, something which the government cannot make criminal. Clay's argument is without merit.
 {¶ 36} Clay and K.B. were married on June 4, 2004. Count one, gross sexual imposition, occurred between May 31, 2003 and September 30, 2003, before Clay and K.B. were married. Counts ten, 11, and 12, unlawful sexual conduct with a minor, occurred in April and May, 2004, before Clay and K.B. were married. The indictment for these counts, to which Clay admitted his guilt, specified that the victim involved in each count was not Clay's spouse. Because Clay was not married to K.B. at the time of these offenses, any argument that these counts attempted to criminalize a sexual relationship between husband and wife is specious.
 {¶ 37} The time frame alleged in the indictment for count 13, pandering sexually-oriented material involving a minor, is July 2004 through August 2005. Although Clay and K.B. were married during this time period, the charge relates to images that were taken prior to the marriage, when K.B. was 13 years old. Thus, the criminal activity was not between consensual married partners, but between Clay *Page 16 
and a victim he later married. Accordingly, Clay's fifth assignment of error is overruled.
V. Sexual Predator Determination
 {¶ 38} In his sixth and seventh assignments of error, Clay challenges the trial court's determination that he is a sexual predator.
 {¶ 39} A sexual predator is defined as a "person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C. 2950.01(E). The law in effect at the time of Clay's sexual predator classification required that the trial court conduct a sexual-predator hearing in the manner described in R.C. 2950.09(B)(1) before adjudicating an offender a sexual predator. (R.C. 2950.09 was repealed effective January 1, 2008.)
 {¶ 40} The law further required that in making a sexual predator determination, the trial court was to consider all relevant factors, including, but not limited to: 1) the offender's age; 2) the offender's prior criminal record; 3) the age of the victim; 4) whether the offense involved multiple victims; 5) whether the offender used drugs or alcohol to impair the victim; 6) whether the offender completed any sentence imposed for a prior criminal offense or participated in available programs for sexual offenders; 7) any mental illness or mental disability of the offender; 8) the nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim, and whether the sexual conduct, sexual contact, or interaction in a sexual *Page 17 
context was part of a demonstrated pattern of abuse; 9) whether the offender, during the offense, displayed cruelty or made one or more threats of cruelty; and 10) any additional behavioral characteristics that contributed to the offender's conduct. R.C. 2950.09(B)(3).
 {¶ 41} The trial court was to consider the statutory factors listed in R.C. 2950.09(B)(3), and discuss on the record the particular evidence and factors upon which it relied in making its determination regarding the likelihood of recidivism. State v. Thompson (2001),92 Ohio St.3d 584, 588. Then, considering the relevant factors, the trial court was to "determine by clear and convincing evidence whether the offender is a sexual predator." R.C. 2950.09(C)(2)(c). Clear and convincing evidence is that degree of proof that will produce in the mind of the factfinder a firm conviction that the allegations are true. See Cross v.Ledford (1954), 161 Ohio St. 469, 477. Where the proof must be clear and convincing, an appellate court examines the record to determine whether sufficient evidence exists to satisfy the requisite degree of proof.State v. Schiebel (1990), 55 Ohio St.3d 71, 74.
A. Sworn Testimony
 {¶ 42} In his sixth assignment of error, Clay contends that he was determined to be a sexual predator without any sworn testimony, thereby denying him due process.
 {¶ 43} A sexual offender classification hearing is not the equivalent of a trial. State v. Gray (Mar. 4, 1999), Cuyahoga App. No. 72940. The Ohio Rules of *Page 18 
Evidence do not strictly apply to sexual offender classification hearings, because the hearing is intended to determine the offender's status, not to determine the guilt or innocence of the offender.State v. Cook (1998), 83 Ohio St.3d 404, 425. As this court previously stated, "R.C. 2950.09 provides both the state and defense with the opportunity to present sworn testimony and cross-examine witnesses under oath, but sworn testimony is just one avenue for demonstrating that an offender may or may not be a sexual predator." Gray, supra. A trial court "has the discretion to consider all evidence which is cogent to the issues so long as the evidence satisfies a basic standard of being reliable, substantive, and probative." State v. Lee (1998),128 Ohio App.3d 710, 719.
 {¶ 44} Here, the trial court considered the presentence investigation report, the court psychiatric clinic's evaluation, victim-impact statements, and the arresting officer's statement, as well as Clay's statement, and statements from two mental health professionals. We find this evidence reliable, substantive, and probative of whether Clay is a sexual predator. We reject Clay's argument that a sexual predator determination may only be made upon sworn testimony and cross-examination and, therefore, overrule his sixth assignment of error.
B. Statutory Factors
 {¶ 45} In his seventh assignment of error, Clay contends that the trial court erred in finding him to be a sexual predator, because the trial court did not reference the statutory factors in making its finding. We disagree. *Page 19 
 {¶ 46} The judge found the ages of the victims, the fact that there were multiple victims, Clay's mental illness, and his "behavioral characteristic" of deliberately attempting to conceal his crimes with his young victims relevant factors to finding that Clay is a sexual predator. The record reflects that the trial judge specifically noted that Clay's bipolar disorder and narcissistic personality were factors in her decision to find him to be a sexual predator, as well as the fact that there were two victims, both very young. In addition, the judge noted that Clay is highly intelligent and had deliberately taken 13-year-old pregnant K.B. to South Carolina and married her in an attempt to evade prosecution for his sexual conduct with her. The judge noted further that in addition to his attempts to conceal his crimes with K.B., Clay deliberately deceived the police and S.C.'s father when S.C. was missing.
 {¶ 47} Because the judge adequately discussed on the record the evidence and factors she relied upon in finding Clay to be a sexual predator, Clay's seventh assignment of error is overruled.
Affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence. *Page 20 
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, A.J., and FRANK D. CELEBREZZE, JR., J., CONCUR.
 APPENDIX APPELLANT'S ASSIGNMENTS OF ERROR
1. Defendant was denied his right to a fair trial.
2. Defendant was denied due process of law when the court accepted pleas of guilty without determining that defendant understood the nature of the offenses.
3. Defendant was denied due process of law when the court sentenced defendant to consecutive sentences without considering the relevant statutory criteria.
4. Defendant was denied his rights under the Sixth and Fourteenth Amendments when the court imposed a sentence based upon judicial factfinding.
5. Defendant was denied due process of law when he was convicted of an offense which infringed on the marital relationship.
6. Defendant was denied due process of law when he was determined to be a sexual predator without evidence.
7. Defendant was denied due process of law when the court found defendant to be a sexual predator.
[1] In accordance with this court's policy, we use initials to protect the minor's identity.
[2] According to K.B.'s grandmother, K.B. is now afraid to go to school, because Clay tracked her down and found her there, triggering what the grandmother called a "psychotic episode." K.B. has since been diagnosed with post-traumatic stress syndrome.
[3] Count one, gross sexual imposition, and counts ten, 11, 12, 14, 15, 16, 17, 18, and 19, unlawful sexual conduct with a minor.
[4] "The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender." *Page 1