The STATE of Ohio, Appellee,

v.

LEE, Appellant.

[Cite as State v. Lee (1998), 128 Ohio App.3d 710.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–970440.

Decided June 26, 1998.

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Steven W. Rakow,* Assistant Prosecuting Attorney, for appellee.

*John K. Issenmann,* for appellant.

SHANNON, Judge.

The defendant-appellant, Anthony R. Lee, brings this appeal as of right from the final order of the Hamilton County Court of Common Pleas entered May 16, 1997, determining him to be a sexual predator pursuant to R.C. 2950.09(B) and the relevant factors set forth in R.C. 2950.09(B)(2) and 2970.01(H)(6).

On June 25, 1986, the Hamilton County grand jury indicted Lee for attempted rape under the terms of R.C. 2907.02, accompanying that charge with a specification of violence predicated upon Lee's prior conviction of robbery on October 26, 1976.

On March 4, 1987, while represented by appointed counsel, Lee pleaded guilty to attempted rape, and, concomitantly, the specification was dismissed. Lee was sentenced to serve a term of six to fifteen years in a state penitentiary.

On April 22, 1997, the Hamilton County Court of Common Pleas ordered the Sheriff of Hamilton County to return Lee from his place of confinement at the Warren Correctional Institution to Hamilton County so that Lee could be present at proceedings to commence on April 20, 1997, before a judge of that court.

On April 25, 1997, counsel thereafter appointed to represent Lee filed a motion to exclude Lee from the application of R.C. 2950.04. After a series of continuances at Lee's request, the matter came on to be heard on May 16, 1997.

At the outset of the hearing, the court informed Lee, in the presence of his counsel, of the reason he was before the court. Lee was advised, *inter alia,* that the Ohio General Assembly had enacted new laws "regarding whether or not certain persons have to be registered with the sheriff after they've been convicted of committing sexually violent crimes," and that the legislature had "made the law apply to people that were already in prison."

In context, the court said:

"If you are found to be what is called a sexual predator, when you get out you are going to have to register with the sheriff wherever you live. And we are here

today to have a hearing to determine whether or not you are what is called a sexual predator."

We note here that Am.Sub.H.B. No. 180, effective January 1, 1998, codified as R.C. Chapter 2950, is the Ohio version of New Jersey's Megan's Law. It seeks to inform the community of the presence of potentially dangerous "sexually oriented offenders" who pose a high risk of recidivism. This notice and awareness will enable citizens to take precautions to ensure their safety. See R.C. 2950.02(A). Before the General Assembly enacted Am.Sub.H.B. No. 180, only "habitual sex offenders" (those separately convicted two or more times for commission of certain sex offenses) were required to register with the sheriff in the county of their residence.

In light of the high risk of recidivism presented by sex offenders classified as sexual predators and habitual sex offenders, the means to "protect the safety and general welfare of the people" are (1) classification, (2) registration, and (3) notification that allows exchange of information among public agencies and officials and that authorizes release of relevant information to the general public. R.C. 2950.02(B).

Lee responded to the court's remarks by stating that he understood the court's words. The court then asked Lee about his scheduled parole eligibility date. Lee answered, "Ten more months," and his attorney added, "It's approximately March of '98." The court inquired of Lee whether he knew why he had been held in prison so long in light of the fact that "this happened back in 1986 and you got a 6–15." Lee said that he "didn't know," and when the court asked whether he had committed "any infractions while in the institution or anything," Lee answered "No." Lee's attorney informed the court:

"He's been up for parole three times and flopped three times. Basically, the nature of the offense, and I think the previous GSI in '76, might have something to do with it.[1]"

Counsel then stated that Lee had "almost done his maximum." In his statements to this court when this appeal was submitted, counsel indicated that to the best of his knowledge Lee has been released from any confinement stemming from his conviction in the case *sub judice*.[2]

---

1. The allusion to the "GSI in '76" concerned an incident catalogued in the local report of Lee's record of criminal misbehavior, which was received by the court and marked as Exhibit 1, and which is discussed below.

2. Where release from confinement of an offender is not imminent, R.C. 2950.09(C)(2) affords a trial court the discretion not to conduct the status determination until a time closer to the release of the offender.

The trial court then proceeded to address itself to Lee's motion questioning the constitutionality of R.C. 2950.04 as it related to individuals such as Lee who had been convicted and sentenced prior to the effective date of the statute. The court overruled Lee's motion orally and found, specifically, that the statutory provisions were constitutional.

The first three of Lee's assignments of error pertain to this segment of the case, and we find it useful, for the reasons which follow, to separate them from the fourth, and last, assignment.

The first assignment and its predicates are as follows:

"The trial court erred in entering a finding that the defendant-appellant is a sexual predator pursuant to O.R.C. 2950.

## "ISSUE PRESENTED FOR REVIEW

"The application of O.R.C. 2950 to the defendant-appellant is unconstitutional since the statute as it relates to said defendant-appellant is an 'ex post facto' law which is in violation of Article I, Section 10 and Article II, Section 28 of the United States Constitution."

The second assignment and the issues within it are as follows:

"The trial court erred in denying the defendant-appellant due process of law as guaranteed by the Fifth and Fourteenth Amendments of the U.S. Constitution.

## "I. ISSUE PRESENTED FOR REVIEW

"O.R.C. 2950 fails to instruct the Court on what weight to give each of the criteria to be used by the Court to classify a defendant, which renders the statute void due to its vagueness.

## "II. ISSUE PRESENTED FOR REVIEW

"House Bill 180 (O.R.C. 2950) denies the defendant-appellant due process of law by not allocating the burden of proof to any party in conducting the classification hearing."

The third assignment and its fundamental issue are as follows:

"The trial court erred in classifying the defendant-appellant pursuant to O.R.C. 2950 in that said classification of the defendant-appellant denies him equal protection of the law as guaranteed by the Fourteenth Amendment of the U.S. Constitution.

■■■■■■■

## "ISSUE PRESENTED FOR REVIEW

"The failure to classify all previous sexual offenders denies the defendant-appellant equal protection of the law."

■■■ In *State v. Lance* (Feb. 13, 1998), Hamilton App. Nos. C–970282, C–970283, and C–970301, unreported, 1998 WL 57359,[3] this court resolved many of the challenges to the constitutionality of Am.Sub.H.B. No. 180, now codified in R.C. Chapter 2950. Specifically, we held that (1) the factors set forth in R.C. 2950.09(B) are not facially vague and do not permit a "standardless sweep" allowing a court to pursue its own "personal predilections"; (2) the scheme imposed by R.C. Chapter 2950 for the classification and registration of sexual predators satisfies procedural due process by providing an offender in a sexual-predator hearing the opportunity to be heard at a meaningful time and in a meaningful manner; (3) R.C. Chapter 2950 satisfies substantive due process and equal protection by being rationally related to a legitimate state interest, and reflects reasonable grounds for distinguishing between sexual predators and other offenders; and (4) because the successive burdens imposed by R.C. Chapter 2950 are nonpunitive, civil remedies, neither the Double Jeopardy Clause, the Ex Post Facto Clause, nor Section 28, Article II of the Ohio Constitution (prohibiting retroactive laws) is implicated.

In sum, *State v. Lance, supra,* stands for the proposition that Ohio's sexual-predator statutes do not violate constitutional provisions against *ex post facto* laws, double jeopardy, or vagueness. See, *e.g., State v. Kenney* (May 22, 1998), Hamilton App. No. C–970443, unreported, 1998 WL 258447. Therefore, we hold that Lee's first, second, and third assignments of error are not well taken and are overruled for the reasons established in *State v. Lance, supra.*

This brings us to our consideration of Lee's fourth assignment of error:

"The trial court erred to the prejudice of the defendant-appellant in determining him to be sexual predator pursuant to O.R.C. 2950."

Lee argues that the court's finding is against the manifest weight of the evidence. He submits, correctly, that R.C. 2950.09(B)(2) requires expressly that the prosecution has the burden to prove by clear and convincing evidence that the defendant is a sexual predator.

The Supreme Court of Ohio, in *Cross v. Ledford* (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118, paragraph three of the syllabus, stated the following with respect to the term "clear and convincing evidence":

---

3. Reporter's Note: Affirmed (1998), 84 Ohio St.3d 17, 701 N.E.2d 692.

"[It] is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."

R.C. 2950.01(E) provides:

" 'Sexual predator' means a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses."

The Ohio General Assembly has established certain criteria to guide trial courts in their determination whether a particular offender is a sexual predator. R.C. 2950.09(B)(2) mandates:

"In making a determination under divisions (B)(1) and (3) of this section as to whether an offender is a sexual predator, the judge shall consider all relevant factors, including, but not limited to, all of the following:

"(a) The offender's age;

"(b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;

"(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;

"(d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;

"(e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;

"(f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;

"(g) Any mental illness or mental disability of the offender;

"(h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;

"(i) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty;

"(j) Any additional behavioral characteristics that contribute to the offender's conduct."

The General Assembly has not, beyond this, established factors in R.C. Chapter 2950 specifically bearing upon a determination of the likelihood that an offender will commit future sexually oriented offenses. However, R.C. 2971.01(H)(2), the statutory provision now used to prove a sexually-violent-predator specification, does separately set forth factors of assistance in forecasting an offender's future sexual behavior, and those factors may be considered by the trial court at a sexual-predator hearing pursuant to R.C. 2950.09(B)(2)(j):

"(a) The person has been convicted two or more times, in separate criminal actions, of a sexually oriented offense. For purposes of this division, convictions that result from or are connected with the same act or result from offenses committed at the same time are one conviction, and a conviction set aside pursuant to law is not a conviction.

"(b) The person has a documented history from childhood, into the juvenile development years, that exhibits sexually deviant behavior.

"(c) Available information or evidence suggests that the person chronically commits offenses with a sexual motivation.

"(d) The person has committed one or more offenses in which the person has tortured or engaged in ritualistic acts with one or more victims.

"(e) The person has committed one or more offenses in which one or more victims were physically harmed to the degree that the particular victim's life was in jeopardy.

"(f) Any other relevant evidence."

Clearly, a threshold issue in the determination whether a past offender is likely to engage in the future in a sexually oriented offense is what evidentiary constraints apply to a sexual-predator hearing. Simply put, the first question in need of resolution is: Do the Ohio Rules of Evidence apply to this civil, remedial hearing?

We find helpful the reasoning of the Twelfth District Court of Appeals in *State v. Warner* (Apr. 20, 1998), Butler App. No. CA97–03–064, unreported, 1998 WL 191412, which concluded that the Ohio Rules of Evidence do not apply to sexual-predator hearings.[4] The court found that because a classification hearing does not occur until after the offender has been convicted of an underlying offense, it

---

4. The Twelfth District Court of Appeals cited, among other decisions, one from the New Jersey Supreme Court, *In re C.A.* (1996), 146 N.J. 71, 679 A.2d 1153, in holding that since a classification for sexual offenders is to be determined at an informal hearing, the rules of evidence do not apply.

is not intended to determine the guilt or innocence of the offender, but instead it results in a determination of the offender's *status.*

We see a sexual-predator hearing to be analogous to that which is conducted when an individual found guilty of a crime is sentenced. At the sentencing stage, a court is privileged to entertain statements and receive information that might otherwise be barred as hearsay or under other restrictive provisions of the rules of evidence. Nevertheless, simple notions of due process must apply. A relaxed standard for admissibility of evidence in a sexual-predator hearing cannot be equated with automatic admissibility of any and all materials. The trial court has the discretion to consider all cogent evidence on the issues so long as the evidence satisfies a basic standard of being reliable, substantive, and probative. Hearsay evidence may come within that ambit, the caveat being that it must be reliable.[5]

Indisputably, the *sine qua non* of due process is a fair trial in a fair tribunal. We now proceed to analyze the process by which the court below received the evidence upon which it determined, ultimately, that Lee is a sexual predator.

Our review of the determination of Lee's sexual-predator status resolves itself into two distinct aspects. First, we must satisfy ourselves that Lee was afforded procedural due process.

R.C. 2950.09(B)(1) provides:

"The court shall give the offender and the prosecutor who prosecuted the offender for the sexually oriented offense notice of the date, time, and location of the hearing. At the hearing, the offender and the prosecutor shall have an opportunity to testify, present evidence, call and examine witnesses and expert witnesses, and cross-examine witnesses and expert witnesses regarding the determination as to whether the offender is a sexual predator. The offender shall have the right to be represented by counsel and, if indigent, the right to have counsel appointed to represent the offender."

---

**5.** Reliable hearsay has been defined as evidence that, while not comporting with the rules of evidence, has "sufficient indicia of reliability to support its probable accuracy." *United States v. Silverman* (C.A.6, 1992), 976 F.2d 1502, 1513, certiorari denied (1993), 507 U.S. 990, 113 S.Ct. 1595, 123 L.Ed.2d 159, quoting *United States v. Smith* (C.A.6, 1989), 887 F.2d 104, 108. In other words, "[the] evidence is reliable in that there is a reasonable probability that it is true." *Our Place, Inc. v. Ohio Liquor Control Comm.* (1992), 63 Ohio St.3d 570, 572, 589 N.E.2d 1303, 1306. Guarantees of trustworthiness of such evidence include that the evidence affords the "trier of fact a satisfactory basis for evaluating the truth of the prior statement." *Ohio v. Roberts* (1980), 448 U.S. 56, 73, 100 S.Ct. 2531, 2543, 65 L.Ed.2d 597, 612, quoting *Mancusi v. Stubbs* (1972), 408 U.S. 204, 216, 92 S.Ct. 2308, 2314, 33 L.Ed.2d 293, 303–304.

Lee does not claim that he was denied any of these rights beneficial to him, and our independent examination of the record convinces us that none was denied him.

In immediate context, the nonexclusive factors to be considered at the hearing held below on May 16, 1997, were those we have already catalogued from R.C. 2950.09(B)(2) and 2971.01(A)(2). At the hearing, after counsel for Lee and the prosecutor both declared their readiness to proceed and the court overruled Lee's motion to exclude him from the application of the statutory scheme, the prosecutor addressed the court upon the issues.[6]

The prosecutor began by giving the court Lee's age at the time of the offense (twenty-eight years) and his current age (thirty-nine years). Then the prosecutor proffered a printout of Lee's record of past contacts with police authorities and his convictions for crimes, including his behavior as a juvenile. The court, without an objection from the defense, admitted the printout, a two-page "RCIC Local Report," as an exhibit. It revealed that Lee had been convicted of attempted rape in April 1984, a number of theft offenses, assaults causing harm, disorderly conduct, breaking and entering, at least two incidents of domestic violence in 1979, and a robbery in October 1976.

Next, the prosecutor recited the facts upon which the attempted-rape charge contained in the 1986 indictment was predicated, supporting those statements with a copy of the transcript of the evidence presented to the grand jury which returned the indictment. The court received the transcript, without an objection, as an exhibit after ordering it to be redacted to obliterate references to the telephone number of the victim, her address, and other indicia that might reveal her location.

The transcript established that on a bright, sunny day in June 1986, a young adult female visited a local park at about 11:30 a.m. to sunbathe. Attired in a bikini, she stretched out on the ground next to an artificial lake and shielded her eyes with an open book. Suddenly, Lee, who was completely nude, threw himself upon the woman's body and attempted to rip the bathing suit from her. Her screams brought to her assistance a number of people from among those nearby. Lee was forcibly restrained until police arrived to arrest him. Lee's only statement to the officers was "I'm a walkaway. I'm a mental [sic ]."

The prosecutor then informed the court that after Lee was arraigned on the indictment, the court of common pleas ordered him to be examined by experts to

---

6. None of the participants spoke under oath. Because R.C. 2950.09(B)(1) specifies that the offender and the prosecutor shall have the opportunity to *testify,* we believe they should be sworn. By definition, to testify is to give one's testimony as a witness under oath. Upon this record, the omission is not critical or must be considered to have been waived.

determine his competency to stand trial. Subsequent to those examinations, Lee was referred to and was examined by a psychiatrist as a consequence of Lee's written plea of not guilty by reason of insanity. Ultimately, the psychiatrist submitted his report to the court, and the prosecutor proffered that report to the trial court in this matter. It was received, again without objection, as an exhibit. The report demonstrated that Lee was examined on September 15, 1986, while confined in jail in accordance with the provisions of R.C. 2945.39. Lee's criminal misbehavior in 1978 and 1980 was detailed, including a conviction for gross sexual imposition and confinement in the Lima State Hospital for sixteen months thereafter. In addition, Lee was hospitalized for mental trouble "in facilities in Cincinnati" on multiple occasions in 1979, 1980, 1984, and 1986. The psychiatrist rendered this opinion:

"It is considered that Mr. Lee does have evidences of a substantial mental disease. It is considered that this disease is characteristic of a schizophrenic disorder. It is considered that this disease is chronic in nature.

"It is my opinion with reasonable medical probability, that Mr. Lee did have the ability to know the wrongfulness of his act, but he was unable to conform his conduct to the requirements of the law.

"It was my opinion in examining Mr. Lee, that Mr. Lee has had repeated contacts with authorities since his juvenile years. Over a period of years since then, he has been confined to penal institutions—dating back to juvenile years, and has continued to have infractions of the law when outside of confinement. It was noted during one period of incarceration, that he required psychiatric help and arrangements were made for him to have psychiatric help. He, however, responded only to a minimal degree and then began a pattern of features of mental disease following this—to such a degree that he has continued to be subject for the court system.

"The recidivistic nature of his behavior and inability to respond only to features of retribution or punishment strongly suggest that this man is in need of inpatient psychiatric treatment. It is considered that the multiple instances of hospitalization have been insufficient for appropriate treatment. It is considered too that his periods of confinement have done nothing to modify his behavior. I view the acts which have occurred as being ones that have been a risk certainly to the safety of others."

All of the exhibits were supplied to and read by Lee's counsel, either before or during the sexual-predator hearing. According to the transcript of the hearing conducted on May 16, 1997, the court had in its possession and took notice of at least one additional report from an expert expressing an evaluation of Lee's mental competency to stand trial. It is not within the record as we have it

certified to us, although counsel for Lee stated to the trial court that he had "gone through it."

When the court solicited a response from Lee to what the prosecutor had presented, his counsel stated among other things:

"On behalf of Mr. Lee, Your Honor, he informs me that the age of the victim that he recalls at the time was probably in the late twenties, early thirties. She was a woman, not a young teenage child or anything of that nature.

"He also informs me that for approximately nine of the last eleven years in the institution he has in fact been in the mental health section of the institution. And I note that Doctor Weaver's—one of the reports I read there, indicating that he was in need of psychological or psychiatric treatment, which I believe he's had.

"I might note those reports indicate his mental situation back in 1976. What his mental situation is right now, I can't tell. I attempted to get the records for him from the Correctional Institute up there in Warren. It was a task that proved to be impossible. However, I don't know what his current mental status is. He indicates he's on medication on a regular basis. I've conversed with him. He appears to be quite competent to understand what is going on with respect to this proceeding."

■ We believe it appropriate to declare, with respect to counsel's diligent but frustrated effort to obtain records from the correctional facility that might have provided pertinent information with which to educate the court on Lee's current mental status, that those who control such records should furnish them promptly when a demand in proper form is made. In so declaring, we recognize that, because of the number of cases in which courts must determine whether an offender is a sexual predator, it may be impossible to require the custodians of such records to appear personally before a trial court, but most certainly the information can be supplied less formally. At the very least, an offender's counsel should be afforded access to the records so that their relevancy can be assessed before the sexual-predator hearing is held.

In this case, counsel concluded his remarks, after acknowledging the extent of Lee's record for crime, by stating:

"We just feel for the reasons of his mental illness that he could not be declared a sexual predator. For that reason, we would ask the Court to deny that classification."

The court answered that contention by outlining again the purpose Ohio's sexual-predator statutes, emphasizing the desire and intent of the General Assembly to protect the public when sexual offenders are released into the community. The court then expressed the difficulty created by the statute:

"In effect, what this Bill is asking judges to do is to predict the future, to predict a future based on what has happened in the past, and try to come up with some reasonable ruling. If I could predict the future, I would quit my job and go into the stock market.

"But the fact is that there is evidence here, based upon the defendant's prior history, that enables the Court to make a ruling. And the fact is that—and I don't mean this—I don't mean this in a derogatory way. I'm not trying to belittle this defendant in any way—but he's the kind of person that the statute is made for. Because of his history, because of his background, because of his prior offenses that are all on the record, coupled with the fact it appears that he does suffer from mental illness, which only exasperates [*sic* ] the problem.

"So the Court does find that Mr. Lee is a sexual predator. He fits the statute. And that he's going to be required when he gets out to make the notification that's necessary and registration with the local sheriff."

What must be avoided in sexual-predator determinations is the indulging, or even the appearance of indulging, a presumption that anyone with a prior sexual offense is a sexual predator. The statute clearly provides an offender with procedural due process, and its operation of it cannot deny or ignore those rights. The declaration of an offender's status as a sexual predator cannot, as a matter of law, be automatic.

The court, although not required to do so by the statute, stated the reasons for its determination that Lee is a sexual predator. This affords a court of review valuable assistance in its resolution of the merits of an appeal and is strongly recommended as a procedure.

Our review of the record convinces us that Lee was given a full and fair hearing, that his rights of due process were protected and preserved, that he was ably represented by competent counsel, and that, indisputably, the court considered the applicable factors under R.C. 2950.09(B)(2), applied pertinent provisions of R.C. 2971.01(H), and fully and fairly evaluated the responses of Lee through his counsel. Accordingly, the determination of Lee's status as a sexual predator is neither against the manifest weight of the evidence nor otherwise contrary to law. Therefore, the fourth assignment of error is overruled.

We note that the trial court's journalized entry of May 16, 1997, ordered the Hamilton County Sheriff to "process" Lee. Pursuant to R.C. 2950.03(A)(1) and 2950.03(C)(1), the processing or collection of information is to be conducted by the proper authority within the penal institution in which the offender is serving his time. The record before us reflects that Lee had not completed his term of imprisonment and that the trial court ordered his return to his resident penal institution following the completion of the limited sexual-predator hearing.

Therefore, as the trial court was without authority to order the sheriff to collect any information, the May 16, 1997, entry ordering the processing of Lee by the Hamilton County Sheriff is vacated.

Therefore, the judgment of the trial court adjudicating Lee a sexual predator is affirmed, but the entry requiring the sheriff to process Lee is vacated.

*Judgment affirmed in part*
*and vacated in part.*

SUNDERMANN, P.J., and HILDEBRANDT, J., concur.

RAYMOND E. SHANNON, J., retired, of the First Appellate District, sitting by assignment.