JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant Joseph Walton appeals from his conviction for one count of attempted rape. For the reasons set forth below, we affirm.
 {¶ 2} On September 19, 2006, defendant was indicted for one count of rape pursuant to R.C. 2907.02(A)(1)(c) in connection with an alleged assault upon J.O. on May 28, 2006. Defendant pled not guilty and the matter proceeded to a jury trial on March 12, 2007.
 {¶ 3} J.O. testified that, earlier in the day, she and her roommates Stephanie Kiszak and Barbara Zawol went to J.O.'s mother's house in Valley City for a cookout. J.O. consumed four or five beers during a three-hour period. She then went home and slept for a while and, at around 10:00 p.m., she and three other friends went to Hotties Nightclub in Parma. At the nightclub, J.O. drank approximately eight beers and four or five "Washington Apples," a mixture of Crown Royal, Apple Pucker and other liquors.
 {¶ 4} The group left the bar at closing time and stopped at their friend Morgan's house where J.O. drank another beer. J.O. did not want to drive while intoxicated so she called her friend, Parma Police Officer Scott Faulisi, to drive her home. When they arrived at J.O.'s home, her brother D.J. was there with his friend Sandy Holland, and defendant, along with the roommates Kiszak and Zawol. J.O. sat on Faulisi's lap then walked him out to his car when he was ready to leave. She then sat down on the couch. She denied any memory of speaking with defendant *Page 4 
and testified that she had never met him prior to this night. She recalled her brother moving her.
 {¶ 5} J.O.'s next memory is waking up and hearing D.J. fighting with defendant. She went downstairs but Kiszak yelled that she was not wearing pants and had to put clothes on. J.O. didn't know what had happened to her pants because she had clothes on when she fell asleep. The police subsequently arrived. Defendant fled. D.J. was extremely upset and was eventually arrested. They also arrested J.O. following her reaction to D.J.'s arrest.
 {¶ 6} After securing her release from jail, J.O.'s friends told her that defendant had raped her and they took her to Parma Community General Hospital. Hospital personnel subsequently directed the woman to Fairview Hospital.
 {¶ 7} Stephanie Kiszak and Barbara Zawol both testified that after J.O. left for Hotties, they decided to stay home and have a few drinks. D.J., Zawol's cousin Dameon, a man named Mike, and Brad Keck arrived. D.J. subsequently left and returned with Holland and defendant. According to Kiszak, Scott Faulisi brought J.O. home. At this time, the woman was stumbling and slurring her words. After Fulisi left, J.O. sat on the living room couch, passed out, and D.J. carried her upstairs. Kiszak went upstairs approximately 15 minutes later to check on the woman and observed that her pants were off and defendant was naked on top of her. Kiszak asked defendant what the hell he was doing and he said nothing and started to dress. D.J. and Brad Keck fought with defendant as he fled downstairs. J.O. came *Page 5 
downstairs, and Kiszak screamed that she was not wearing pants. Kiszak admitted that defendant was highly intoxicated when he arrived at the party.
 {¶ 8} Brad Keck testified that the group had been drinking and playing card games. J.O. arrived "totally wasted" and was brought home by a man who subsequently left. She subsequently passed out and D.J. carried her up to her bedroom. Holland could not find defendant and someone went to the basement to look for him. Kiszak went upstairs to look for him and observed him in bed with J.O., who was not wearing pants. According to Keck, Kiszak tried to awaken J.O. but could not do so and he and D.J. then began to fight defendant. D.J. testified that his sister arrived at the party with Faulisi and was "sloshed." She then drank a rum drink and fell asleep on the couch. D.J. carried her up to her room. He stated that he accidentally hit her head on the way upstairs but she did not awaken. He left her fully clothed. He and Holland then slipped away from the party for a short time and, when they returned, Holland could not find defendant. Kiszak then told D.J. that she had seen defendant having sex with J.O. and that J.O. was still asleep. D.J. and Keck fought with defendant, who then fled.
 {¶ 9} D.J. went to the Parma Justice Center to report the incident then returned home to wait for a squad car. He was hysterical and yelling when they arrived and was later arrested. His sister attempted to intervene on his behalf and was also arrested. He admitted that defendant had been drinking and was slurring his words. *Page 6 
 {¶ 10} Officer Faulisi testified that J.O. was "well intoxicated" when he brought her home. He stayed a short time and observed that defendant was also intoxicated.
 {¶ 11} Fairview Hospital nurse Laura Gaertner testified that she collected evidence from J.O. for a rape kit, including various swabs and clothing. She also testified that she observed an injury inside the cervix on the right side.
 {¶ 12} Sandra Holland testified that she has a daughter with defendant and has known him for five years. She testified that J.O. was "not too intoxicated" and was kissing defendant, who had also been drinking. Holland next testified that defendant followed as D.J. carried the woman upstairs and D.J. then came down alone. After the fight erupted, J.O. came downstairs wearing black underwear. No semen was found on the vaginal samples, the rectal samples, the oral samples or the clothing. A mixture of DNA was recovered from defendant's underwear. This sample was consistent with J.O.'s DNA and the likelihood that someone other than J.O. contributed to the sample was one in one million individuals. The second component of the mixture was consistent with defendant's DNA and the likelihood that someone other than defendant contributed to the sample was one in one million six hundred thousand individuals. Forensic scientist Stacy Violi acknowledged, however, that DNA can transfer through nonsexual conduct.
 {¶ 13} The court also permitted introduction of defendant's video statement. In it, defendant stated that he and J.O. had been kissing. She then told him that she *Page 7 
felt a little "buzzed" but invited him up to her bedroom. Defendant subsequently undressed but J.O. was still wearing underwear when Kiszak came into the room and the fight erupted. He denied engaging in intercourse with J.O.
 {¶ 14} The trial court subsequently submitted the matter to the jury. The jury was charged on the offenses of rape, attempted rape, and various lesser included offenses including gross sexual imposition and sexual imposition. Defendant was subsequently convicted of attempted rape and sentenced to six years of imprisonment and five years of postrelease control. Following a subsequent hearing, he was determined to be a sexual predator. Defendant now appeals and assigns six errors for our review.
 {¶ 15} Defendant's first assignment of error states:
 {¶ 16} "The state committed prosecutorial misconduct by improperly vouching for the credibility of witnesses in closing arguments."
 {¶ 17} Within this assignment of error, defendant submits that the prosecuting attorney improperly vouched for the credibility of witness Brad Keck.
 {¶ 18} As an initial matter, we note that there was no objection to this remark so we review for plain error. Crim.R. 52.
 {¶ 19} The test for prosecutorial misconduct is whether the alleged remark was improper and, if so, whether it prejudicially affected the substantial rights of the defendant. State v. Smith, 87 Ohio St.3d 424,442, 2000-Ohio-450, 721 N.E.2d 93. "The touchstone `is the fairness of the trial, not the culpability of the prosecutor.'" Id., *Page 8 
quoting Smith v. Phillips (1982), 455 U.S. 209, 219, 102 S. Ct. 940,947, 71 L.Ed.2d 78.
 {¶ 20} In State v. Draughn (1992), 76 Ohio App.3d 664, 602 N.E.2d 790, the Court stated: "[i]n opening and closing argument the prosecutor is limited to comments upon the evidence, and the logical and appropriate conclusions to be drawn therefrom. Thus, he can bolster his own witnesses, and conclude by saying, in effect, The evidence supports the conclusion that these witnesses are telling the truth.' He cannot say, `I believe these witnesses,' because such argument invades the province of the jury, and invites the jury to decide the case based upon the credibility and status of the prosecutor. See, also, State v. Smith
(1984), 14 Ohio St.3d 13, 470 N.E. 2d 883. In a sense, such argument by the prosecutor injects himself into the trial as a thirteenth juror, and claims to himself the first vote in the jury room. Further, it is inappropriate for the prosecutor to vouch for the integrity of his witnesses. Id.
 {¶ 21} `* * *He may comment upon the circumstances of witnesses in their testimony, including their interest in the case, their demeanor, their peculiar opportunity to review the facts, their general intelligence, and their level of awareness as to what is going on. He may conclude by arguing that these circumstances make the witnesses more or less believable and deserving of more or less weight.
 {¶ 22} "* * * *Page 9 
 {¶ 23} "However, the prosecutor may not invite the jury to judge the case upon standards or grounds other than the evidence and law of the case. Thus, he cannot inflame the passion and prejudice of the jury by appealing to community abhorrence or expectations with respect to crime in general, or crime of the specific type involved in the case.United States v. Solivan (C.A.6, 1991), 937 F.2d 1146."
 {¶ 24} Defendant challenges the following portion of the prosecutor's closing argument:
 {¶ 25} "If you think about Brad [Keck] and how he describes things and you're assessing credibility, I would argue to you that looking at someone like Brad, pretty much everything he said — aside from his filters-must be true. The guy is not the smartest guy in the world. And you can feel it just by your interaction between him and Mr. Luskin and me and him. I'd argue to you that the guy is just about incapable of concocting a lie." (Tr. 934-935).
 {¶ 26} In this instance, we conclude that the challenged remarks were, on balance, a comment as to Keck's overall intelligence and level of awareness as to what happened on the night of the party. As such, the comment did not vouch for Keck's credibility through the credibility of the prosecuting attorney. Moreover, the trial court instructed the jury that it was the sole judge of the credibility of a witness. We find no plain error in connection with this remark. The first assignment of error is overruled.
 {¶ 27} Defendant's second assignment of error states: *Page 10 
 {¶ 28} "The trial court never conducted the statutorily required analysis in determining that Mr. Walton is a sexual predator."
 {¶ 29} R.C. 2950.09(B), the version of the sexual predator law in effect at the time of the alleged attempted rape and the sexual predator hearing, set forth the following with regard to sexual predator hearings:
 {¶ 30} "* * * At the hearing, the offender and the prosecutor shall have an opportunity to testify, present evidence, call and examine witnesses and expert witnesses, and cross-examine witnesses and expert witnesses regarding the determination as to whether the offender is a sexual predator. * * *"
 {¶ 31} In State v. Eppinger, 91 Ohio St.3d 158, 166, 2001-Ohio-247,743 N.E.2d 881, the Supreme Court outlined the model sexual predator hearing as follows:
 {¶ 32} "In a model sexual offender classification hearing, there are essentially three objectives. First, it is critical that a record be created for review. Therefore, the prosecutor and defense counsel should identify on the record those portions of the trial transcript, victim impact statements, presentence report, and other pertinent aspects of the defendant's criminal and social history that both relate to the factors set forth in R.C. 2950.09(B)(2) and are probative of the issue of whether the offender is likely to engage in the future in one or more sexually oriented offenses. If the conviction is old, as in this case, the state may need to introduce a portion of the actual trial record; if the case was recently tried, the same trial court may not need to *Page 11 
actually review the record. In either case, a clear and accurate record of what evidence or testimony was considered should be preserved, including any exhibits, for purposes of any potential appeal.
 {¶ 33} "Second, an expert may be required, as discussed above, to assist the trial court in determining whether the offender is likely to engage in the future in one or more sexually oriented offenses. Therefore, either side should be allowed to present expert opinion by testimony or written report to assist the trial court in its determination, especially when there is little information available beyond the conviction itself. While providing an expert at state expense is within the discretion of the trial court, the lack of other criteria to assist in predicting the future behavior of the offender weighs heavily in favor of granting such a request.
 {¶ 34} "Finally, the trial court should consider the statutory factors listed in R.C. 2950.09(B)(2), and should discuss on the record the particular evidence and factors upon which it relies in making its determination regarding the likelihood of recidivism."
 {¶ 35} In State v. Clay, Cuyahoga App. No. 89763, 2008-Ohio-1415, this court stated:
 {¶ 36} `"A sexual offender classification hearing is not the equivalent of a trial. State v. Gray (Mar. 4, 1999), Cuyahoga App. No. 72940, 1999 Ohio App. LEXIS 834. The Ohio Rules of Evidence do not strictly apply to sexual offender classification hearings, because the hearing is intended to determine the offender's *Page 12 
status, not to determine the guilt or innocence of the offender.State v. Cook, 83 Ohio St.3d 404, 425, 1998-Ohio-291, 700 N.E.2d 570. As this court previously stated, `R.C. 2950.09 provides both the state and defense with the opportunity to present sworn testimony and cross-examine witnesses under oath, but sworn testimony is just one avenue for demonstrating that an offender may or may not be a sexual predator.' Gray, supra. A trial court `has the discretion to consider all evidence which is cogent to the issues so long as the evidence satisfies a basic standard of being reliable, substantive, and probative. State v. Lee (1998), 128 Ohio App.3d 710, 719,716 N.E.2d 751."
 {¶ 37} In this matter, the trial court reviewed the presentence report and the Court Psychiatric Clinic Sexual Evaluation Report. This report, prepared by Peter Brach of the Court Psychiatric Clinic, indicates that defendant obtained a score of 5 on the STATIC 99 evaluation based upon "Prior sex offenses (one charge, no convictions); Four or more Prior Sentencing Dates; Prior non-sexual violence convictions (misdemeanor conviction for battery); Any unrelated victims; Any stranger victims. * * * Mr. Walton meets DSM-IV criteria for Alcohol Abuse." Neither party sought sworn testimony nor objected to the absence of such testimony. The defense objected to the STATIC 99 score because it allowed for an enhanced prediction of recidivism based upon non-sexually related offenses, but in our view, there was no evidence to suggest that this factor is erroneously included.
 {¶ 38} The trial court was disturbed by the STATIC 99 score, the fact that *Page 13 
defendant denied having sex with strangers yet the trial evidence demonstrated that this matter stemmed from attempted sexual conduct with a stranger, and defendant's prior record. In short, we cannot say that the trial court erred in determining that there was reliable, substantive, and probative evidence of whether Clay is a sexual predator. We reject the argument that a sexual predator determination may only be made upon sworn testimony and cross-examination and, therefore, overrule this assignment of error.
 {¶ 39} Defendant's third assignment of error states:
 {¶ 40} "Mr. Walton was denied due process of law and trial by jury by virtue of having been found to be a sexual predator in a non-jury proceeding because the sexual predator designation is an additional punishment for his criminal offenses."
 {¶ 41} Defendant next asserts that R.C. 2950.09 as amended by Senate Bill 5 imposes ex post facto punishment because the amendment repealed an offender's ability to seek removal of the sexual predator label and imposed residency restrictions.
 {¶ 42} This court rejected the same claim in State v. Ferguson, Cuyahoga App. No. 88450, 2007-Ohio-2777, discretionary appeal not allowed by State v. Ferguson, 115 Ohio St. 3d 1472, 2007-Ohio-5735,875 N.E.2d 626. We therefore reject it herein.
 {¶ 43} Defendant's fourth assignment of error states:
 {¶ 44} "Mr. Walton was denied due process of law by virtue of the residency *Page 14 
restriction placed upon him as a sexual registrant."
 {¶ 45} Within this assignment of error, defendant asserts that the residency restriction of the sexual predator laws impermissibly infringes upon his fundamental liberty interest, denies him substantive due process and violates his right to privacy.
 {¶ 46} In State v. Bruce, Cuyahoga App. No. 89641, 2008-Ohio-926, this court determined that this type of challenge is waived if not raised in the trial court. We stated:
 {¶ 47} "We decline to exercise our discretion, and find that appellant has waived the issues raised under this assignment of error. Appellant has failed to show that he has suffered any actual deprivation of his property rights by operation of R.C. 2950.031, as there was no evidence presented to show that he owns or resides in property within 1,000 feet of any school premises. Nor had appellant alleged that he was forced to move from an area due to his proximity to a school, or even that he has any intention of moving to a residence within 1,000 feet of a school premises.
 {¶ 48} "* * *
 {¶ 49} "Additionally, we find that appellant lacks standing to raise a constitutional challenge to R.C. 2950.031. `The constitutionality of a state statute may not be brought into question by one who is not within the class against whom the operation of the statute is alleged to have been unconstitutionally applied and who has not been injured by its alleged unconstitutional provision.' * * *. `Likewise, *Page 15 
it has been held that a defendant lacks standing to challenge the constitutionality of R.C. 2950.031 where the record fails to show whether the defendant has suffered an actual deprivation of his property rights by operation of R.C. 2950.031.'"
 {¶ 50} Herein defendant urges us not to apply the waiver rule discussed in State v. Bruce, supra, because if waiver is found, he claims he will be required to violate the restriction in order to assert a challenge to the law, and will be at a disadvantage since the assertion will then be raised as an affirmative defense and he will "no longer be statutorily entitled to counsel." This court will not render advisory opinions on matters not properly before it, however.
 {¶ 51} Defendant's fifth assignment of error states:
 {¶ 52} "Mr. Walton's conviction was not supported by sufficient evidence."
 {¶ 53} When reviewing a challenge to the sufficiency of the evidence, an appellate court must view the evidence in a light most favorable to the prosecution and determine if any rational trier of fact could have found the essential elements of the crime, proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, at paragraph two of the syllabus, citing Jackson v. Virginia (1979),443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. Thus, a reviewing court will not overturn a conviction for insufficiency of "the evidence unless we find that reasonable minds could not reach the conclusion reached by the trier of fact." State v. Treesh, 90 Ohio St.3d 460, 484, 2001-Ohio-4,739 N.E.2d 749.
 {¶ 54} R.C. 2923.02(A) defines a criminal attempt and provides that "no *Page 16 
person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."
 {¶ 55} The offense of rape is defined, in relevant part as follows:
 {¶ 56} "(A) (1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies * * * (c) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age."
 {¶ 57} In this matter, the evidence demonstrated that defendant had never met J.O. before the night of the party. The evidence presented by the state further demonstrated that the woman consumed a vast amount of alcohol and was visibly intoxicated and slurring her words when she returned home. She then passed out on the couch and by all accounts was carried to her room by her brother. The state's evidence also demonstrated that after people at the party began to look for defendant, they found him naked on top of J.O. J.O. then awoke during the confrontation with defendant, D.J. and Keck. The woman testified that she had fallen asleep with clothes on and was unaware that she was not wearing pants when *Page 17 
she awoke. Both the woman's DNA and defendant's DNA was recovered from defendant's underwear and she had evidence consistent with an injury in her cervix . We conclude that any rational trier of fact could have found the essential elements of attempted rape proven beyond a reasonable doubt. This assignment of error lacks merit.
 {¶ 58} Defendant's sixth assignment of error states:
 {¶ 59} "Mr. Walton's conviction was against the manifest weight of the evidence."
 {¶ 60} In State v. Thompkins, supra, the court illuminated its test for manifest weight of the evidence as follows:
 {¶ 61} "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." Black's [Law Dictionary (6 Ed.1990)], at 1594."
 {¶ 62} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a ""thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. Id., citingTibbs v. Florida (1982), 457 U.S. 31, 45, 102 S. Ct. 2211, 2220, *Page 18 72 L.Ed.2d 652, 663. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.See State v. Martin (1983), 20 Ohio App.3d, 172, 175, 485 N.E.2d 717,720-721.
 {¶ 63} The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id.
 {¶ 64} Here, the state's evidence demonstrated that defendant and the woman had never met before the night of the party, the woman consumed a great deal of alcohol and was returned home visibly intoxicated then passed out on the couch and was carried to her room by her brother. When the group then began to look for defendant, they found him naked and on top of J.O. DNA from both the woman and defendant was recovered from defendant's underwear. The state also presented physical evidence consistent with penetration. Defendant claimed that the woman was only "buzzed" and kissed him and invited him to her room. They then agreed to a consensual encounter but were interrupted by the girl's friends before any sexual conduct occurred. We cannot say that the jury lost its way in convicting defendant of the offense of attempted rape. The state's evidence was consistent and supported by medical and scientific testimony. Defendant's contention, on the other hand, was self-serving and implausible in light of the fact that it is undisputed that the woman *Page 19 
had to be carried to her room by her brother.
 {¶ 65} This assignment of error lacks merit.
Affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 CHRISTINE T. MCMONAGLE, P.J., and PATRICIA ANN BLACKMON, J., CONCUR