[Cite as *State v. Walker*, 2023-Ohio-810.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STATE OF OHIO,                                    :

     Plaintiff-Appellee,               :

                                      No. 111656

     v.                                              :

DAVID A. WALKER,                             :

     Defendant-Appellant.             :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 16, 2023

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-661578-A

---

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Megan Helton, Assistant Prosecuting Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Michael V. Wilhelm, Assistant Public Defender, *for appellant.*

EILEEN T. GALLAGHER, P.J.:

{¶ 1} Defendant-appellant, David A. Walker ("Walker"), appeals the trial court's judgment classifying him as a sexual predator under Megan's Law, originally

enacted in Am.Sub.H.B. No. 180, 146 Ohio Laws, Part II, 2560 ("H.B. 180"). He raises the following assignments of error for review:

> 1. The trial court erred in considering information that was not part of the record, to wit, the allegation that Mr. Walker propositioned other women.

> 2. The record is devoid of clear and convincing evidence for why Mr. Walker should be designated a sexual predator.

{¶ 2} After careful review of the record and relevant case law, we affirm the trial court's judgment.

## I. Procedural and Factual History

{¶ 3} On March 25, 2022, Walker pleaded guilty to six counts of attempted sexual battery in violation of R.C. 2923.92 and 2907.03(A)(12); one count of endangering children in violation of R.C. 2919.22(B)(1); and one count of unlawful sexual conduct with a minor in violation of R.C. 2907.04(A). The charges stemmed from allegations that Walker used his position of trust as a youth pastor to sexually abuse a juvenile member of his church between December 2004 and December 2006. The victim, J.S., was approximately 14 years old at the time the sexual abuse began.

{¶ 4} Prior to sentencing, Walker filed a sentencing memorandum, arguing that he was not likely to reoffend based on various mitigating factors, including his minimal criminal history, his demonstration of remorse, and his medical history. Walker sought community-control sanctions, but alternatively asserted that if the trial court were to find incarceration was necessary, a minimum term of imprisonment was appropriate. In support of his memorandum, Walker attached a

letter from his primary-care physician and approximately 24 letters of support from his family, friends, and members of his community.

{¶ 5} At the time of sentencing, the trial court determined that a prison sentence was "consistent with the purposes and principles of sentencing and that [Walker is] not amendable to a community control sanction." (Tr. 66.)  In support of its conclusion, the trial court relied extensively on the nature of Walker's conduct, stating:

> Mr. Walker, I have gone over the purposes and principles of sentencing, and factors relating to seriousness and recidivism.  I understand that the purposes are to punish the offender using the least restrictive means.  * * *  But at this point looking at the seriousness of your conduct, that you took advantage of somebody you were supposed to protect, somebody you were supposed to help form into a fully functioning adult.  You took away her youth, her faith probably at some point, and manipulated her belief in God for your own sexual desires.  The position that you used to facilitate that is so outside the bounds of what is acceptable in society that they made it criminal to the point where there is no reason why you should not be sentenced to prison for your conduct.
>
> The conduct being less serious * * * is not applicable to you.  This is as serious as it gets.  When you use your position as a youth pastor to victimize sexually a girl who's 13, 14, 15 and using that position to ruin a life, and you did do that.  And in Count 15, one of the counts, you actually had sex with her in the basement of the church.  I don't know how much more you can defile somebody.

(Tr. 65-66.)  Accordingly, the trial court sentenced Walker to an aggregate prison term of four and one-half years.

{¶ 6} On June 6, 2022, the trial court held a hearing to determine Walker's classification status under Megan's Law, former R.C. Chapter 2950.01, et seq.  On behalf of the state, Detective Kenneth Vagase ("Det. Vagase") of the North Olmsted

Police Department testified that in October 2019 he was assigned to investigate the sexual-assault allegations levied against Walker. In the course of his investigation, Det. Vagase interviewed J.S. and learned that she first met Walker when she was approximately 13 years old. J.S. was a member of a youth group at a church where Walker served as a youth pastor. When Walker and his wife moved to the area from Florida, members of the youth group, including J.S., helped Mr. and Mrs. Walker move into their new home. On this occasion, J.S. and other members of the youth group slept over at Walker's home. Det. Vagase testified that Walker's first inappropriate interaction with J.S. occurred during this sleep over, stating:

> So it was during the overnight that she had been asleep, she woke up and that's when Mr. Walker was laying [sic] next to her basically touching her hands, her mouth, that kind of stuff.

(Tr. 74.)

{¶ 7} After this initial encounter, Walker and J.S. began to have daily interactions through church, which ultimately developed into a sexual relationship. Det. Vagase specified that Walker and J.S. engaged in vaginal and oral sex on approximately "600 or more" occasions. (Tr. 81.) On at least one occasion, Walker and J.S.'s sexual conduct involved the participation of Walker's wife, Anna Walker. Det. Vagase testified that the sexual abuse carried on for several years and ended when J.S. was "between 16 and 17 years old." (Tr. 81.)

{¶ 8} While performing his investigation in this matter, Det. Vagase learned of other women, M.S., N.S., R.M., R.P., E.W., or M.M, who may have had inappropriate interactions with Walker when they were teenagers or young women.

Det. Vagase specified that Walker made explicit and sexual propositions to at least six other women on numerous occasions. Walker's alleged conduct included, but was not limited to, him propositioning women to have sex with him and his wife, him asking women to masturbate, him sending women inappropriate text messages and nude photographs, and him asking women to send him nude photographs of themselves.[1] (Tr. 85-87.) Det. Vagase testified that Walker often expressed remorse to these individuals for his conduct and blamed his behavior on pain medication.

{¶ 9} On cross-examination, Det. Vagase conceded that beyond the statements gathered during his investigation, he had no independent evidence to support any of the allegations of M.S., N.S., R.M., R.P., E.W., or M.M. Det. Vagase therefore clarified that although he believed the information corroborated Walker's "pattern of behavior," charges were not pursued against Walker for his past involvement with these other women. (Tr. 89.)

{¶ 10} At the conclusion of the hearing, the trial court classified Walker as a sexual predator, finding that Walker engaged in a significant pattern of abuse and is likely to engage in one or more sexually oriented offenses in the future. The trial court explained its judgment, stating, in relevant part:

> So I would agree with the State that subsection H demonstrated a pattern of abuse. If you were to put something on a scale of 1 to 10 being a pattern, a significant pattern of abuse, a 10 being that, I think he would be a 10. This was something that, you know, on a daily basis, you're trying to basically make this woman a second wife to you. And

---

[1] In general, the record does not reflect these individuals' ages or the nature of the relationship they shared with Walker at the time the allegedly inappropriate conduct occurred.

he utilized the church, God, and was with her nearly every day over that three-year period.

And the pattern of abuse was so significant as to be outranked by any of the other factors. It's as much of a pattern as has been presented in this court then it's likely to engage in the future.

* * * [T]he thing that really bothered me a lot about this case is a couple of things. One, Mr. Walker's description of his first time is an accident and everything after was a mistake. This wasn't a mistake. This was a pattern of abuse.

And on top of that, there was a pattern of cover-up. At least one other adult, Mrs. Walker knew of the abuse. And there's been at least some clear and convincing evidence that other adults knew about it, too. * * * So there are adults that knew about this.

And so the thing that pairs with that, that really bothers me about this likely to engage in the future and notification, the purpose of notifying the community is because all of the quote letters of support that were received, which clearly indicated to the court that Mr. and Mrs. Walker were telling their fellow churchgoers something completely different than what happened here. And they believed this was something that it wasn't. That I think somebody said it was disgusting how somebody can make these allegations up. And these are not allegations. This girl could probably explain everything in their home, all the times that she spent with them, the times that she traveled in their car.

* * *

So at this point, I don't see based on [Walker's] own behavior and his attempts to cover up his own behavior, to hide his own behavior, to make excuses for his own behavior, and to try and position himself as a trustworthy member of the community after what he has done to this girl, gives me no other choice than to classify him as a sexual predator.

(Tr. 104-107.)

{¶ 11} Walker now appeals from the trial court's judgment.

## II. Law and Analysis

{¶ 12} In the first assignment of error, Walker argues the trial court committed reversible error by considering information that was not part of the trial record when designating him as a sexual predator. Specifically, Walker contends that Det. Vagase's references to unsubstantiated and unrelated allegations of inappropriate propositions constituted unreliable hearsay. In the second assignment of error, Walker argues his classification as a sexual predator is against the manifest weight of the evidence. He contends the state failed to show, by clear and convincing evidence, that he is likely to engage in sexually oriented offenses in the future. We address these assignments of error together because they are related.

{¶ 13} Former R.C. Chapter 2950, commonly known as Megan's Law, divides sex offenders into three categories (1) sexually oriented offenders, (2) habitual sexual offenders, and (3) sexual predators. *State v. Cook*, 83 Ohio St.3d 404, 407, 700 N.E.2d 570 (1998). To be classified as a "sexual predator," the most severe designation, the trial court must find, by clear and convincing evidence, (1) that the defendant has been convicted of, or pleaded guilty to, a sexually oriented offense; and (2) that he is likely to engage in one or more sexually oriented offenses in the future. *State v. Eppinger*, 91 Ohio St.3d 158, 163, 743 N.E.2d 881 (2001), citing former R.C. 2950.01(E) and 2950.09(B)(3).

{¶ 14} Clear and convincing evidence has been defined as "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal

cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 15} Former R.C. 2950.09(B)(3) lists ten factors to be considered in determining whether a sexual offender is a sexual predator (1) the offender's age; (2) the offender's criminal record; (3) the age of the victim; (4) the number of victims; (5) whether the offender used drugs or alcohol to impair the victim; (6) if the offender has previously been convicted of a crime, whether he completed his sentence; and if the prior offense was a sexually oriented offense, whether he completed a sex-offender program; (7) mental-health history; (8) the nature of the offender's sexual conduct with the victim and whether the sexual conduct was part of a demonstrated pattern of abuse; (9) whether the offender displayed cruelty or made threats of cruelty; and (10) any other "behavioral characteristics" that contribute to the offender's actions. *See* former R.C. 2950.09(B)(3)(a)-(j).

{¶ 16} The "trial court is not required to individually assess each of these statutory factors on the record nor is it required to find a specific number of these factors before it can adjudicate an offender a sexual predator so long as its determination is grounded upon clear and convincing evidence." *State v. Caraballo*, 8th Dist. Cuyahoga No. 89757, 2008-Ohio-2046, ¶ 8, citing *State v. Ferguson*, 8th Dist. Cuyahoga No. 88450, 2007-Ohio-2777; *State v. Purser*, 153 Ohio App.3d 144, 149, 2003-Ohio-3523, 791 N.E.2d 1053 (8th Dist.). "The court need not elaborate on its reasons for finding certain factors as long as the record includes the particular

evidence upon which the trial court relied in making its adjudication." *Caraballo* at ¶ 8, citing *Ferguson*; *Eppinger* at 166.

{¶ 17} Because sex-offender classifications under Megan's Law are civil in nature, we review sex-offender designations under a civil manifest-weight-of-the-evidence standard. *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, at syllabus. The manifest-weight-of-the-evidence standard concerns "'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A reviewing court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the trier of fact." *Eastley* at ¶ 21.

{¶ 18} Preliminarily, we note that courts have long recognized that the rules of evidence do not apply to adult sexual-offender-classification hearings. *See State v. Cook*, 83 Ohio St.3d 404, 425, 700 N.E.2d 570 (1998). This is because such hearings are "'similar to sentencing or probation hearings where it is well settled that the Rules of Evidence do not strictly apply.'" *State v. Hassenruck*, 9th Dist.

Lorain No. 17CA011230, 2018-Ohio-4546, ¶ 19, quoting *State v. Wright*, 9th Dist. Summit No. 18941, 1999 Ohio App. LEXIS 2980, *2 (June 23, 1999), quoting *Cook* at 425. Accordingly, we find the trial court was well within its discretion to consider the information gathered by Det. Vagase during his investigation when making its sexual-predator determination. *See State v. Miller*, 8th Dist. Cuyahoga No. 104747, 2017-Ohio-1554, ¶ 26, citing *State v. Lee*, 128 Ohio App.3d 710, 719, 716 N.E.2d 751 (1st Dist.1998) ("[t]he trial court has the discretion to consider all cogent evidence on the issues so long as the evidence satisfies a basic standard of being reliable, substantive, and probative"). The challenged information substantiated J.S.'s statements to investigators and was probative of Walker's pattern of conduct and behavioral tendencies.

{¶ 19} Regarding the weight of the evidence supporting the trial court's judgment, Walker concedes that he pleaded guilty to a sexually oriented offense. Walker further acknowledges the "heinous" nature of his crimes and "readily admits that he took advantage of the victim's faith and the position of trust he held to orchestrate consistent sexual activity." However, Walker submits that "the record is devoid of anything that suggests he is likely to be a threat in the future." He summarizes his position as follows:

> [T]here was no evidence submitted showing that Mr. Walker had pursued sexual criminal activity, or any criminal activity, outside the relationship he had with J.S. He has not had any alcohol since 2019. He does not engage in drug use. He has left his position as a youth pastor and is now a realtor. Mr. Walker has significant health issues that make sexual activity painful and required him to have a child via

[in vitro fertilization]. And his [Ohio Risk Assessment Report] score indicates he is a low risk for committing criminal activity in the future.

{¶ 20} Upon review of the record, we find the trial court's judgment classifying Walker as a sexual predator is supported by competent, credible evidence. Although Walker has taken steps to address several of the issues he believes may have contributed to his past conduct, his arguments do not negate the nature of his sexual conduct with the victim, the breadth of his demonstrated pattern of abuse, or the aspects of his behavior that are indicative of future conduct. In this case, Walker engaged in vaginal and oral intercourse with a teenage girl on approximately 600 occasions over a span of several years. To facilitate the sexual abuse, Walker carefully and intentionally manipulated his position of power and trust within the church and local community to isolate and groom J.S. The heinous nature of his conduct and pattern of secrecy is only matched by the substantial period of time his corruption proved successful. The information and allegations pertaining to other women served to corroborate the severity of Walker's behavioral tendencies and the propensity of his inappropriate acts.

{¶ 21} In addition, we find the record corroborates the court's observation that Walker (1) attempted to maintain his status as a trustworthy member of his community by going to great lengths to cover-up or hide his behavior, and (2) repeatedly diminished his conduct by characterizing his pattern of abuse as an accident or mistake. Together, these factors minimized Walker's expression of

remorse at the time of sentencing and were relevant to the court's assessment of whether he was likely to commit a sexually oriented offense in the future.

{¶ 22} Mindful that the weight to be given the evidence and the credibility of the witnesses are matters primarily for the trier of fact, we find the collective evidence adduced at the classification hearing clearly and convincingly established Walker's pattern of abuse and his propensity to initiate, proposition, or otherwise participate in inappropriate sexual activity with vulnerable individuals within his immediate community. *See State v. Wright*, 11th Dist. Ashtabula No. 2020-A-0022, 2020-Ohio-5577, ¶ 71 ("[I]t is appropriate for a trier of fact to look at past behavior at a sexual classification hearing since past behavior is often an important indicator of future conduct."); *see also State v. Purser,* 153 Ohio App.3d 144, 2003-Ohio-3523, 791 N.E.2d 1053, ¶ 42 (8th Dist.) ("[P]sychological tests designed to indicate a sexual offender's propensity to reoffend, and the resulting risk level, must * * * not be blindly relied upon."); *State v. Bagnall*, 11th Dist. Lake No. 2005-L-029, 2006-Ohio-870, ¶ 16 ("[T]he opinion that an offender demonstrates a low to moderate risk of sexual recidivism is not determinative of the issue of whether he may be classified a sexual predator."). Under these circumstances, we cannot say that the trial court lost its way in determining that the mitigating factors cited by Walker on appeal did not outweigh the factors indicating that he is likely to reoffend. Accordingly, the trial court's sexual-predator classification is not against the manifest weight of the evidence.

{¶ 23} Walker's first and second assignments of error are overruled.

**{¶ 24}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, PRESIDING JUDGE

EMANUELLA D. GROVES, J., and
MICHAEL JOHN RYAN, J., CONCUR